# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TAMMY FAYE CASTLEMAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 4:18-CV-00498-RDP** |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Acting Commissioner of** | } | |
| **Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM DECISION

Plaintiff Tammy Faye Castleman ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Proceedings Below

Plaintiff applied for a period of disability and DIB on December 17, 2014, alleging disability commencing September 3, 2013 due to type II diabetes, neuropathy, rheumatoid arthritis, kidney dysfunction, back surgery, neck surgery, mental confusion, memory loss, lack of sleep, and anemia. (R. 61, 74, 80, 203). Plaintiff's application was initially denied on January 30, 2015. (R. 72-73). On April 3, 2015, she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 100). The hearing was held on January 31, 2017; thereafter, an unfavorable decision was issued on March 22, 2017. (R. 11-32, 37-59). The Appeals Council denied Plaintiff's request for review

of the ALJ's decision on January 26, 2018. (R. 1-4). Because the denial of review by the Appeals Council constitutes the final act of the Commissioner, the case is now ripe for this court's review pursuant to 42 U.S.C. § 405(g).

## II.     Facts

Plaintiff was born on August 2, 1960 and was 56 years old at the time of the ALJ's decision. (R. 11, 41). Plaintiff has some college education and previously worked as an apartment assistant manager, bookkeeper, and accounting technician. (R. 41, 56). She alleges disability due to type II diabetes, neuropathy, rheumatoid arthritis, kidney dysfunction, back surgery, neck surgery, mental confusion, memory loss, lack of sleep, and anemia, commencing September 3, 2013. (R. 203). The date she was last insured for disability benefits, or her date last insured ("DLI"), was December 31, 2014. (R. 16, 174).

On May 17, 2012, Plaintiff saw her primary care physician, Dr. Rupen Joshi, for a physical exam. (R. 429-35). He diagnosed her with the following conditions: degeneration of the intervertebral disc; essential hypertension; diabetes mellitus without mention of complication; abnormal weight gain; heartburn; pain in joint; and allergic rhinitis, cause unspecified. (*Id.*).  On May 31, 2012, Dr. Joseph Christian Scales, a radiologist, performed a radiologic examination of Plaintiff's thoracic spine, finding her disc spaces to be degenerated at several levels with anterior osteophytes (bone spurs) present; Dr. Scales's overall impression was "[n]o acute findings in the thoracic spine. Multilevel degenerative disc disease." (R. 480). Dr. Scales also conducted a radiologic examination of Plaintiff's cervical spine, finding anterior cervical fusion from C3 to C5, degenerative disc disease at C5 to C6, moderate left foraminal encroachment at C5 to C6, and right foraminal narrowing at C6 to C7. (R. 481). Overall, Dr. Scales noted "[n]o acute findings in the

cervical spine. Degenerative change at C5-C6 and C6-C7." (*Id.*) The radiological examination of Plaintiff's lumbosacral spine was unremarkable. (R. 482).

On September 27, 2012, Plaintiff saw Dr. Joshi with severe pain in the mid to lower back, neck, and left shoulder. (R. 420). Plaintiff reported being in a car wreck the previous week, where she was hit from behind by another car. (R. 420). Plaintiff's extremities exhibited no edema. (R. 420). Dr. Joshi also noted mild tenderness in the spine. (R. 420). On that same date, Dr. Thomas Charles Bell, a radiologist, recorded the results of a radiologic examination of the spine as "[m]odest degenerative disease," noting "moderate degenerative facet changes" and "modest osteophytosis of the vertebral bodies." (R. 478).

On October 11, 2012, Plaintiff saw Dr. Joshi with back pain. (R. 416). Dr. Joshi diagnosed a sprain and strain of her sacrum, degeneration of intervertebral disc, diabetes mellitus without mention of complication, and hypertension. (R. 417).

On November 6, 2012, Plaintiff checked into the emergency room complaining of back pain. (R. 259-60). Dr. Russell Simpson diagnosed her with acute lumbar myofascial strain and chronic low back pain, then prescribed her methocarbamol and Medrol upon discharge. (*Id.*). The next day, November 7, she called Dr. Joshi's office, reporting that she was not able to walk without severe pain and that the pain pills and muscle relaxers were not helping her. (R. 452). Dr. Joshi agreed to refill her muscle relaxers and recommended physical therapy. (*Id.*).

On December 12, 2012, Plaintiff saw Dr. Joshi with pain in her toes and lower back. (R. 413). Dr. Joshi treated an ingrown toenail on Plaintiff's left toe. (R. 415). He also diagnosed onychia[1] and paronychia[2] of her toe and prescribed Lamisil. (*Id.*).

On March 13, 2013, Plaintiff saw Dr. Joshi, describing pain in her neck and back, as well as numbness in her hands from sleeping on her side. (R. 410). Dr. Joshi prescribed Robaxin for the degeneration of her intervertebral disc. (R. 412).

On April 26, 2013, Dr. Larry Parker, an orthopedist, reported Plaintiff had intractable lower back pain and radiculitis. (R. 254-55). On April 29, 2013, Dr. Parker performed a microlumbar discectomy on Plaintiff's left L5-S1 vertebral segment, citing her history of back pain with radiation to the left lower extremity. (R. 252). Plaintiff saw Dr. Parker again on May 7, 2013 for a post-surgery visit; Dr. Parker noted that Plaintiff had "not been very active and I have informed her of the importance of her activity and getting back to a normal daily activity level." (R. 269).

On May 26, 2013, Plaintiff was admitted to the hospital, reporting persistent nausea, vomiting, and diarrhea, as well as abdominal pain. (R. 243, 245). Although flat view imaging initially showed a possible small-bowel obstruction (R. 250), the follow-up helical CT images of Plaintiff's abdomen presented normal results. (R. 248). On May 27, an abdominal ultrasound revealed suspected fatty infiltration of the liver; there was no indication of hydroureter or hydronephrosis in her kidneys. (R. 247). Upon her discharge on May 28, attending physician Dr. Devi P. Misra diagnosed Plaintiff with acute gastroenteritis (most likely viral type), hypokalemia (corrected), hypomagnesemia (corrected), and fever. (R. 243).

---

[1] Onychia is the inflammation of the matrix of a nail often leading to suppuration and loss of the nail. "Onychia." Merriam-Webster Online Medical Dictionary. 2019. https://www.merriam-webster.com/medical/onychia (29 July 2019).

[2] Paronychia is the inflammation of the tissues adjacent to the nail of a finger or toe usually accompanied by infection and pus formation. "Paronychia." Merriam-Webster Online Dictionary. 2019. https://www.merriam-webster.com/dictionary/paronychia (29 July 2019).

On June 18, 2013, Plaintiff saw Dr. Joshi in follow up to her hospital visit. (R. 407). Plaintiff reported swelling in her right leg since being discharged from the hospital. (R. 407). Dr. Joshi conducted ultrasound imaging on Plaintiff's right leg; he ruled out deep vein thrombosis and advised exercise and a low-salt diet. (R. 408, 477).

On December 4, 2013, Plaintiff followed up with Dr. Joshi. (R. 401). He reported that Plaintiff had lost weight after exercising and changing her diet. (R. 402). Her extremities exhibited no edema. (R. 403).

On February 4, 2014, Plaintiff saw Dr. Larry M. Parker to review her progress following her April 2013 microdiscectomy surgery. (R. 266). Dr. Parker reported that she had no leg pain and her back pain was moderate. (*Id.*). He also noted that physical therapy had helped. (*Id.*). She had lost weight and was doing well overall. (*Id.*). She exhibited 5+/5 motor strength and no sensory deficits in the lower extremities, and a good range of motion in the hips, knees, and ankles. (*Id.*).

On March 3, 2014, Plaintiff visited Dr. Dale Culpepper at SportsMed Orthopaedic Surgery and Spine Center. (R. 299). Dr. Culpepper recommended surgery for a recurrent ganglion cyst in her left wrist. (R. 299-300). On March 21, 2014, Plaintiff had the ganglion cyst excised. (R. 309-10). On April 1, 2014 and May 21, 2014, Dr. Culpepper reported that Plaintiff was doing well and had good movement of the wrist and fingers following the surgery. (R. 297, 303).

On March 11, 2014, Plaintiff visited Dr. Joshi for left foot pain. A diabetic foot exam revealed a normal inspection, normal circulation, and normal monofilament. (R. 400). Plaintiff exhibited no edema in her extremities. (R. 400). In his treatment plan, Dr. Joshi continued Plaintiff on Metformin HCl tablets for her diabetes mellitus and encouraged her to exercise and have a diabetic eye exam performed annually. (R. 400). In addition to prescribing Robaxin, Ultram, and

Mobic for the degeneration of her intervertebral disc, Dr. Joshi notes that Plaintiff was receiving physical therapy for this issue. (R. 400-01).

On July 15, 2014, Dr. Scott C. Hitchcock, a neurologist, conducted a nerve conduction study and limited electromyography on Plaintiff. (R. 495, 516). Dr. Hitchcock found that the "electrodiagnostic study reveals no evidence of peripheral neuropathy. A small fiber neuropathy can cause paresthesias and lack of temperature discrimination as she is experiencing. She may have a diabetic small fiber neuropathy, which can happen even with borderline diabetes. Autonomic dysfunction may occur as well." (R. 487). An evaluation of the left sural anti-sensory nerve showed prolonged distal peak latency and decreased conduction velocity. (R. 487). The evaluation indicated that all remaining nerves were within the normal limits. (*Id.*).

On September 2, 2014, Plaintiff saw Dr. Michael Quadrini, a nephrologist, for evaluation of her renal insufficiency. (R. 312). She had trace edema in her lower extremities, primarily in the feet and toes, but her sensation was intact, muscle tone was intact, and her gait appeared steady. (R. 314). Her creatinine level was 1.4, but Dr. Quadrini did not know her baseline creatinine level. (R. 314). Dr. Quadrini diagnosed acute kidney injury, but did not rule out chronic kidney disease. (R. 314, 485).

On September 15, 2014, Plaintiff saw Dr. Joshi for neuropathy and numbness in her legs. (R. 390). Plaintiff reported difficulty at work because the job required her to stand and walk all day. (R. 390). She exhibited no edema. (R. 390). A diabetic foot exam revealed reduced monofilament sensation but normal circulation. (R. 392).

On October 2, 2014, Plaintiff saw Dr. Hitchcock complaining of paresthesia. (R. 513). Dr. Hitchcock identified small fiber neuropathy, based on a biopsy (R. 515), a urine test, and ruling

out autoimmune diseases, vitamin deficiencies, celiac disease, and Fabry's disease. (*Id.*). The only abnormality he found was elevated creatinine, for which Plaintiff was seeing a nephrologist. (*Id.*).

On October 22, 2014, Plaintiff saw Dr. Kun Chen, a rheumatologist, to evaluate her joint pain and neuropathy. (R. 370). Dr. Chen reported no synovitis in her fingers, knees, or ankles. (R. 371). Dr. Chen stated he did not see "significant evidence of inflammatory arthritis or a connective tissue disease." (R. 371).

On November 11, 2014, Plaintiff followed up with Dr. Quadrini. (R. 319). Her creatinine level was 1.5. (R. 316). Dr. Quadrini reported that "while this may represent AKI [acute kidney injury], I am more suspicious that this is from developing CKD [chronic kidney disease], as she has numerous risk factors for the development of CKD[.]" (R. 316). Her ultrasound was unremarkable. (R. 316). Her hemoglobin level was 11.2; Dr. Quadrini noted that he would recheck that and would consider IV iron therapy if needed. (R. 316). Plaintiff exhibited trace edema in the lower extremities, intact sensation, intact muscle tone in all extremities, and steady gait. (R. 318). Plaintiff received iron infusions in November and December 2014. (R. 319-27).

On November 18, 2014, Plaintiff visited Dr. Chen for her hand and feet pain. (R. 365). Dr. Chen noted that a neurologist had previously done neuropathy tests, which had come back negative. (R. 365). Antinuclear antibody screening and ANA tests also came back negative. (R. 365). An X-ray did not show any evidence of osteoarthritis or erosive changes. (R. 365). Plaintiff exhibited trouble opening and closing her hands, and even light touch of the finger joints produced severe pain. (R. 365). However, she exhibited no synovitis in her hands, wrists, elbows, or knees. (R. 365). Dr. Chen wrote that the etiology of Plaintiff's hand pain was unclear. (R. 365).

On December 9, 2014, Plaintiff returned to see Dr. Chen. (R. 358). She still had pain in her forearms and hands, but Dr. Chen observed no synovitis. (R. 358). Lab tests indicated possible rheumatoid arthritis. (R. 358). Plaintiff reported 50% improvement with prednisone. (R. 358).

On December 18, 2014, Plaintiff saw Dr. Joshi again, complaining about chronic pain in her hands, feet, arms, and lower back. (R. 387). She exhibited no edema. (R. 387). A diabetic foot exam revealed reduced monofilament sensation but normal circulation. (R. 387).

On January 16, 2015, Plaintiff saw Dr. Chen to be evaluated for joint pain. (R. 533). He prescribed prednisone. (R. 533). On February 7, 2015, Plaintiff, reportedly in a wheelchair and crying from pain, followed up with Dr. Chen. (R. 532). Dr. Chen took her off prednisone because of elevated blood sugar. (*Id.*) He noted some puffiness in the joints of her hands, tenderness in her hands and wrists, and swelling and warmness of her right ankle. (*Id.*). Overall, Dr. Chen suspected underlying inflammatory arthritis, very likely rheumatoid arthritis. (*Id.*).

At the request of the Social Security Administration, Plaintiff saw Dr. Sherry A. Lewis on February 19, 2015 for a consultative examination regarding Plaintiff's alleged neuropathy, rheumatoid arthritis, and diabetes. (R. 535). Dr. Lewis reported that Plaintiff did not use any form of assistance device and walked with a normal appearing gait. (R. 537). Plaintiff had tenderness in her wrists, a decreased range of motion, but no other abnormalities. (R. 538). Dr. Lewis reported her other joints as "nontender" and noted "an absence of swelling, deformity, or temperature abnormalities in any of her [other] joints"; full range of motion in all other joints, without clicks, popping, or crepitus; and 5+/5+ muscle strength in all major muscle groups. (*Id.*). Dr. Lewis also reported that Plaintiff's hand joints "are tender without deformity. [She] protests that it hurts all of the small joints of her hands with even minimal contact, almost before you can reach for her hands. Without contact from me, when she is asked to open and close in a setting not directly focused on

her hands, this lady has a full range of motion of all of the joints of her hand." (*Id.*). Dr. Lewis reported that Plaintiff had the ability to make and release a fist, has 5+/5+ grip strength in each hand, and has normal dexterity. (*Id.*). Dr. Lewis noted Plaintiff's back was without deformity, normally aligned, not tender, and had a normal range of motion. (R. 539). Dr. Lewis reported, "Embellishment is a possibility in this lady." (*Id.*). In Dr. Lewis's professional opinion, Plaintiff was able to perform activities of work in spite of her impairments. (*Id.*) Those activities include sitting, walking, lifting, carrying, handling objects, hearing, speaking, and traveling. (*Id.*).

On November 30, 2015, Dr. Joshi filled out a medical questionnaire regarding Plaintiff's impairments. (R. 549-52). The pre-printed questionnaire asks a variety of questions about Plaintiff's abilities and impairments, with spaces for checkbox, circling, and fill-in-the-blank responses. (*Id.*). Dr. Joshi reported seeing Plaintiff every three months. (R. 549). He identified the following diagnoses: diabetes mellitus, polyneuropathy, hypertension, chronic kidney disease, fibromyalgia, and degenerative disc disease. (R. 549). In another series of checkboxes, Dr. Joshi reported the following symptoms: fatigue; excessive thirst; swelling; sensitivity to light, heat, or cold; general malaise; kidney problems; psychological problem; nausea/vomiting; extremity pain and numbness; frequency of urination; sweating; headaches; and dizziness/loss of balance. (R. 549). He checked yes when asked if Plaintiff's impairments have lasted or can be expected to last at least twelve months. (*Id.*). He selected yes when asked whether emotional factors contribute to the severity of the patient's symptoms and functional limitations. (*Id.*). He selected "anxiety" when asked to identify any psychological conditions affecting the Plaintiff's physical condition. (*Id.*). Dr. Joshi wrote that Plaintiff can walk less than one city block without rest or severe pain. (R. 550). He circled that Plaintiff can only sit for two hours before needing to get up. (*Id.*). He circled that Plaintiff can only stand for 15 minutes at a time. (*Id.*). He answered no when asked whether

Plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking. (*Id.*).

He answered yes when asked whether Plaintiff needs to include periods of walking around during an eight-hour work day. (*Id.*). Dr. Joshi noted that Plaintiff will sometimes need to take unscheduled breaks during a work day. (*Id.*). He checked yes when asked if Plaintiff needed her legs to be elevated with prolonged sitting and stated that her legs would need to be elevated at all times if she had a sedentary job. (*Id.*).

Dr. Joshi also answered questions about what activities Plaintiff can perform, how much weight she can lift, and how frequently she can lift it. (R. 551). He checked that Plaintiff is likely to be "off task" 25% of the time or more because of symptoms interfering with attention and concentration. (*Id.*). Dr. Joshi checked that Plaintiff would be capable of low stress work and that Plaintiff's impairments would be likely to produce "good days" and "bad days." (*Id.*). He estimated that Plaintiff would likely be absent more than four days per month at a full-time job because of her impairments. (R. 551-52). He checked yes when asked whether Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in this evaluation. (R. 552). A portion of Dr. Joshi's handwriting is illegible, but he appears to have written that Plaintiff "has neuropathy for both feet & legs + fibromyalgia. She has [sic] seen by several consultants…Has degenerative disc LA-5 + T-spine + central spine." (*Id.*).

## III. ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial

gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 3, 2013 through her date last insured of December 31, 2014. (R.

16). The ALJ identified the following severe impairments: lumbar degenerative disc disease, history of microdiscectomy at L4-SI, type II diabetes mellitus, stage III chronic kidney disease, status post excision of ganglion cyst of the left wrist, history of neuropathy, and history of blister on her toe. (R. 16).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 18). The ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity to lift and/or carry, including upward pulling, twenty pounds occasionally and ten pounds frequently; stand and/or walk with normal breaks for six hours a day in an eight-hour workday; and sit with normal breaks for six hours in an eight-hour workday. (R. 18). The ability to push and/or pull, including the operation of hand and/or foot controls, was unlimited up to the lifting/carrying limits of 10 and 20 pounds. (*Id.*). She could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*Id.*) She was restricted from work on ladders, ropes, or scaffolds, and work around dangerous machinery or unprotected heights. (*Id.*).

At step four, the ALJ found Plaintiff capable of performing her past relevant work as a bookkeeper and accounting technician, neither of which required work-related activities precluded by her RFC, and was not disabled between her alleged onset date, September 3, 2013, and her DLI, December 31, 2014. (R. 30-31).

Alternatively, at step five, the ALJ found that other jobs exist in significant numbers in the national economy that the claimant could also have performed, considering her age, education, work experience, and RFC. (R. 31-32). 20 C.F.R. § 404.1569.

## IV.    Plaintiff's Argument for Remand or Reversal

In this case, Plaintiff presents the following arguments:[3],[4] (1) the ALJ failed to properly determine the date of disability pursuant to Social Security Ruling 83-20; (2) the ALJ failed to accord proper weight to the treating physician, Dr. Rupen Joshi, and failed to show good cause therefore; and (3) the finding that claimant can perform past work is not supported by substantial evidence and is not in accordance with proper legal standards. The court addresses each argument, in turn.

## V.    Standard of Review

The only relevant questions for this Court to decide are whether the record contains substantial evidence to support the ALJ's decision, *see* 42 U.S.C. § 405; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 92 F.2d 129, 131 (11th Cir. 1990). Under 42 U.S.C. § 405(g), the Commissioner of Social Security's findings are conclusive so long as they are supported by "substantial evidence." The district court may not reconsider the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must review the record in its entirety to determine whether the decision reached is reasonable and supported by substantial evidence. *Id.*

---

[3] Plaintiff also argues that the ALJ failed to properly consider her "excellent work history"; however, neither the Eleventh Circuit nor the Social Security Rules requires the ALJ to consider excellent work history in the determination of Plaintiff's subjective complaints. *See Dudley v. Berryhill*, No. 4:17-CV-01424-AKK, 2019 WL 1281194, at *7 (N.D. Ala. Mar. 20, 2019).

[4] The Government, in its brief in support of the Commissioner's decision, argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. (Def.'s Br., Doc. #10, at 14). Plaintiff never fully challenges the ALJ's evaluation of her subjective complaints in either her brief or her reply brief. "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue[.]" *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). Because Plaintiff's briefs do not present adequate argument on this issue, the court is under no obligation to consider it. *See Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-01148-ACA, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019).

(citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* It is relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id.* (citing *Bloodworth*, 703 F.2d at 1239). Even if the evidence preponderates against the Commissioner's findings, the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. *Id.* Despite the limited review of the ALJ's findings, review does not automatically prompt the court to affirm. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI.    Discussion

A claimant bears the burden of proving she is disabled. *See* 20 C.F.R. § 404.1512 (2018); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). For DIB, a claimant must prove that her disability existed prior to the end of her insured status period; if the disability arose after insured status is lost, a claimant will be denied disability. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131. Here, Plaintiff's DIL ended on December 31, 2014. (R. 174). Therefore, she had the burden of proving that she was disabled between her alleged onset date of September 3, 2013, and her DLI, December 31, 2014. Upon review of the record as a whole, the court concludes that Plaintiff has not met this burden; rather, the court holds that the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law. For this reason, as well as those explained in more detail below, the Plaintiff's arguments fail.

## A. The ALJ Was Not Required to Consult a Medical Expert in Establishing the Onset Date of Disability Under Social Security Ruling 83-20

Plaintiff argues that the ALJ failed to comply with Social Security Ruling (SSR) 83-20, 1983 WL 31249 (S.S.A. 1983)[5] because he did not obtain testimony from a medical expert to determine the date that she became disabled. (Pl.'s Br., Doc. 9 at 42-47). However, SSR 83-20 does not apply to this case because, as the ALJ found, Plaintiff was not disabled during the relevant period. (R. 32). *See Caces v. Comm'r*, 560 F. App'x 936, 938 (11th Cir. 2014).

SSR 83-20 describes the procedure by which an ALJ should determine the onset date of a disability. *See* 1983 WL 31249; *Caces*, 560 F. App'x at 938. According to the Eleventh Circuit, the "plain language of SSR 83-20 indicates that it is applicable *only after there has been a finding of disability* and it is then necessary to determine when the disability began." *Caces*, 560 F. App'x at 939 (emphasis added); *accord Klawinski v. Comm'r*, 391 F. App'x 772, 776 (11th Cir. 2010). Judges of this court have likewise stated in clear terms that SSR 83-20 does not apply where disability was not established. *See Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-01148-ACA, at *2 (N.D. Ala. Apr. 3, 2019); *Spurlock v. Colvin*, No. 4:15-CV-330-LSC, 2016 WL 1580350, at *5 (N.D. Ala. Apr. 20, 2016); *Shipman v. Colvin*, No. 2:12-CV-1795-LSC, 2014 WL 4829535, at *8 (N.D. Ala. Sept. 29, 2014). Plaintiff openly acknowledges the Eleventh Circuit's

---

[5] SSR 83-20 was rescinded and replaced on October 2, 2018 by SSR 18-01P, 2018 WL 4945639 (S.S.A. Oct. 2, 2018). "Retroactivity is not favored in the law…and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The Eleventh Circuit has declined to apply a regulation retroactively where it expressly provided an effective date, concluding that there was no reason to specify an effective date if the provision was to be applied retroactively. *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1351 (11th Cir. 2005). The text of SSR 18-01P includes an applicable date of October 2, 2018, stating, "We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date, in any case in which we make a determination or decision. *We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.*" SSR 18-01P, 2018 WL 4945639 (S.S.A. Oct. 2, 2018) (emphasis added). SSR 18-01P does not apply retroactively because it has no language suggesting, much less requiring, retroactive application. *See Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 704 (11th Cir. 2018). Because this claim was filed while SSR 83-20 was in effect, this court will review the claim's applicability under SSR 83-20.

position on this issue (Pl.'s Br., Doc. #9 at 42-43, 45), yet suggests this court follow the law from other circuits. (Pl.'s Br., Doc. #9 at 43-44). That is a non-starter.

This court will follow the Eleventh Circuit's teachings and the well-reasoned decisions of judges in this district. Because the ALJ did not find Plaintiff to be disabled, there was no need to consult a medical expert to establish a disability onset date. Plaintiff's argument fails.

**B. Substantial Evidence Supports the ALJ's Decision to Give the Treating Physician's Opinion Limited Weight**

Plaintiff next argues that the ALJ inappropriately discounted the opinion of Plaintiff's treating physician, Dr. Rupen Joshi. (Pl.'s Br., Doc. #9 at 47). The court disagrees. The ALJ properly evaluated this opinion in accordance with applicable regulations and legal precedent, and substantial evidence supports the ALJ's findings and the decision to give this opinion little weight. (R. 24-25).

The testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985). "Good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053.

The ALJ may give the treating physician's opinion controlling weight if the opinion is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(c)(2).

The Eleventh Circuit has declined to second-guess the ALJ's assessment of the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). When the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *See Weekley v. Comm'r*, 486 F. App'x 806, 808 (11th Cir. 2012) (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)).

Here, the ALJ articulated specific reasons for giving limited weight to Dr. Joshi's opinion (R. 24-28), and substantial evidence supports those reasons. As the ALJ correctly noted, Dr. Joshi filled out the checkbox and fill-in-the-blank form on November 30, 2015, eleven months after Plaintiff's DLI. (R. 24, 27, 552). Where the medical record contains a retrospective diagnosis -- that is, a physician's post-DLI opinion that the claimant suffered a disabling condition prior to the DLI – such a diagnosis is not entitled to deference unless corroborated by pre-DLI medical evidence. *See Mason v. Comm'r*, 430 F. App'x 830, 832 (11th Cir. 2011).

The ALJ correctly found that Dr. Joshi's opinion was conclusory and unsupported. (R. 25, 549-52). *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (explaining there is good cause to disregard a treating source opinion where the "opinion was conclusory or inconsistent with the doctor's own medical records"). As the ALJ noted, Dr. Joshi did not provide medical records or objective medical evidence, from himself or from other physicians, in support of the opinion he expressed on the form. (R. 25). *See* 20 C.F.R. § 404.1527(c)(3) (2018) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [will be given] that opinion"). There is no evidence or

indication by the doctor himself of even having access to or review of the records of specialists relevant to the period at issue when completing the form.

The ALJ was also correct that Dr. Joshi's opinion was inconsistent with the record evidence, including his own treatment notes. (R. 26-27). An ALJ may discount a treating physician's opinion when it is inconsistent with the record evidence. *See* 20 C.F.R. § 404.1527(c)(2), (c)(4); *Crawford v. Comm'r*, 363 F.3d 1155, 1159 (11th Cir. 2004). Specifically, as the ALJ explained, the severe limitations Dr. Joshi identified were inconsistent with the record evidence showing small fiber neuropathy instead of peripheral neuropathy, steady gait, only trace or no edema, normal strength in the upper and lower extremities, and intact circulation. (R. 24-27, 266, 307, 314, 318, 392, 395, 400, 403, 487, 513). Monofilament testing was abnormal, but Plaintiff's lower extremity sensation was otherwise intact. (R. 318, 387, 392, 400). Dr. Joshi's diagnosis of fibromyalgia as an impairment is inconsistent with the objective medical record and a neurologist's diagnosis during the period at issue. (R. 365, 487). Further, as the ALJ explained, Dr. Joshi's conclusory opinion was essentially an RFC statement, and the RFC finding is an issue reserved to the Commissioner. (R. 25). *See* 20 C.F.R. § 404.1527(d).

The ALJ clearly articulated the reasons for giving the treating physician's opinion less weight, and these reasons were supported by substantial evidence. The ALJ therefore had good cause for discounting the treating physician's opinion.

### C. Even if Plaintiff Had Not Abandoned Her Argument that Substantial Evidence Does Not Support the ALJ's Determination that She Could Perform Past Work, the ALJ's Findings are Supported by Substantial Evidence

Plaintiff does not apply the facts of this case in making her argument that substantial evidence does not support the ALJ's determinations at steps four and five. At step four of the sequential evaluation, the ALJ found Plaintiff capable of performing her past relevant work as a

bookkeeper and accounting technician, neither of which required work-related activities precluded by her RFC, and was not disabled between her alleged onset date, September 3, 2013, and her DLI, December 31, 2014. (R. 30-32).

Plaintiff argues the ALJ erred in finding she could perform her past work as a cleaner/housekeeper, laundry worker, fast food worker, and cashier. (Pl.'s Br., Doc. #9 at 55). The ALJ's decision never refers to those jobs or Plaintiff's ability to perform them, and there is no evidence in the record that Plaintiff ever performed these jobs. (*Id.*). Plaintiff cites to Document 9a, page 22 (Pl.'s Br., Doc. #9 at 55), but there is no Document 9a in this record, nor does page 22 of the record indicate that Plaintiff could perform these jobs. Plaintiff then provides blockquotes from a litany of cases, without ever applying the facts of this case to those rules. (Pl.'s Br., Doc. #9 at 55-61). "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue[.]" *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). Because Plaintiff's briefs do not present adequate argument on this issue, the court is under no obligation to consider it. *See Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-01148-ACA, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019); *Wood v. Berryhill*, No. 4:18-CV-558-RDP, 2019 WL 3413785, at *6 n.3 (N.D. Ala. July 29, 2019). Alternatively, after careful review, the court concludes that the ALJ's determination that the Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.

**VII.    Conclusion**

The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this August 14, 2019.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE